## THE STATE v. WILLIAM LOVELL.

"Auction pools," " French pools " and " combination pools," upon horse-races, are lotteries, within the Crimes Act. *Rev.*, §§ 51, 52.

On *certiorari*.

The defendant was charged by allegation, in the Special Sessions of Hudson county, with publicly setting up, opening and making a certain lottery for money in that county, and with selling a lottery ticket therein.

To this allegation the defendant pleaded not guilty; and, upon trial of the same, the court found the following facts, viz. :

The defendant was engaged in the city of Hoboken, in the county of Hudson, in the business commonly known as pool-selling, and was so engaged on the 5th day of June, A. D. 1877, and so continued until the 28th day of June, in the year aforesaid, and on divers days, during the time aforesaid, he disposed of pools on the Jerome Park horse-races in the State of New York. The said pools were disposed of at his place of business in the city of Hoboken. The races were run at Jerome Park, in the State of New York.

The disposition of pools consists in three methods :

1st. Those known as auction pools.

2d. Those known as French pools.

3d. Those known as combination pools.

The system of pools, auction, French and combination, are identical in principle, although differing somewhat in method.

In all pools the profits to the pool-sellers consist in the commissions, and all moneys invested in pools are left with them until the races are determined.

The method or system of auction pools is as follows :

A certain number of horses is entered to be run at a certain race, to be held at a certain time and place. Any person

desiring to invest money in a pool on the race offers to the auctioneer a certain amount of money for the choice or selection of a horse which he supposes will be the winner of the race. A number of bids may be offered for the first choice. The person offering the highest amount obtains the first choice or selection of the horse he supposes will be the winner, which horse he then and there names; the amount then and there offered for this first choice is then and there deposited in the hands of the person conducting the pools.

It often occurs that after several different choices are selected by the persons bidding, there remains a number of horses undisposed of; these are called the field. These are taken together by the person offering and depositing the highest amount for the same.

The amounts so deposited for each choice and the field, (if there is a field), are added together, and the total constitutes what is commonly called " the pool." Each person so depositing his money on his choice or on the field receives a card or receipt for the same, showing the horse or (if on the field), the horses selected, the amount so deposited, and the total amount in the pool. The money in the pool, (less the commission of the person or persons conducting the pools), is paid to the person having selected the winning horse in the race, upon presentation to the person conducting the pool of the card or receipt aforesaid.

French pools are adapted to persons of smaller means, or those who wish to invest only small amounts. A list of the horses in a certain race is placed on an indicator, in the open view, and to each horse is attached a number, a clear space being reserved for the name of each horse, with a separate dial attached, which shows the number of times the horse has been chosen. A person wishing to invest money on a certain horse, purchases of the person having charge of the pool, a card or receipt, commonly called a ticket, stating, at the time, the horse upon which he wishes to purchase the card or ticket, which ticket has on its face a number, which corresponds

with the number attached to the name of the horse on the indicator.

This number is used merely to facilitate business, and has no other significance.

When the purchase has been made, the pool indicates the whole number of cards, receipts or tickets sold or taken, upon an indicator placed in the open view, and this is done from time to time as each ticket, card or receipt is purchased or taken.

When the pool is closed, the total amount invested on the different horses, or the amount of the different cards or tickets purchased or taken upon the different horses, is added together and shown on a different dial in open view, called the total, and the total constitutes the pool.

The total, less the commission of the persons conducting the pools, is divided in equal sums and paid to the persons having selected, taken or purchased the cards or tickets on the winning horse, upon presentation of their cards or tickets.

Any number of persons, acting separately, may choose the same or any horse in the race, and the amount paid for each card, receipt or ticket is the same.

The number of cards, tickets or receipts sold or taken on each horse is unlimited.

Any person may buy or take as many cards, receipts or tickets on each horse, or upon any horses in the race, as he chooses.

The combination pools are similar to what are called French pools. In combination pools there must be at least three events or contests.

The person speculating in combination pools must select his choice in the contests, the same as is done in the French pools for the one contest; but in order to win he must have selected the winner in each contest. If any one of his choices fails, he wins nothing. Any number of persons may select the same combination, and if any particular combination wins, the persons having selected that combination are entitled to the total amount, less the commission, to be equally divided

upon producing their cards or tickets. The sum deposited on each selection of a combination is uniform.

In any of the above pools, whether auction, French or combination, the amount invested may be greater or less than the amount of gain in case of success.

And upon the foregoing facts the court found the defendant guilty as charged in the foregoing allegations, and thereupon imposed the sentence and judgment of the law, that the defendants be fined $10 and costs, and that the said defendant stand committed until the fines and costs be paid.

Upon this conviction the defendant sued out a writ of *certiorari* to the Supreme Court, and there insisted that the facts found do not show the setting up of a lottery, or the sale of a lottery ticket within the provisions of the Crimes Act. *Rev.*, §§ 51, 52.

Argued at February Term, 1877, before Justices DIXON and SCUDDER.

For the state, *A. Q. Garretson.*

For the defendant, *Herbert Stout* and *J. H. Lippincott.*

The opinion of the court was delivered by

DIXON, J. A lottery is defined as being a scheme for the distribution of prizes by chance, (*Bouv. Law Dict.*)—a game of hazard, in which small sums are ventured for the chance of obtaining a larger value, either in money or other valuables. *Worcester's Dict.* Where a pecuniary consideration is paid, and it is determined by lot or chance, according to some scheme held out to the public, what the party who pays the money is to have for it, or whether he is to have anything, it is a lottery. *State* v. *Clarke,* 33 *N. Hamp.* 329 ; *Hull* v. *Ruggles,* 56 *N. Y.* 424.

It was not disputed on the argument, nor is it disputable, that all the elements of these definitions existed in the facts found by the court below, save only that of chance. The

scheme of " pools" set up by the defendant, was one in which the public were invited to hazard small sums of money, for the purpose of receiving, as prizes, larger sums.    But it was insisted, on behalf of the defendant, that whether the person hazarding the small sum was to receive a larger one or not, depended, not upon chance, but upon his own good or bad judgment in selecting the horse on which he placed his bet; and this, therefore, is the point to be decided.    In *State* v. *Shorts*, 3 *Vroom* 398, it was held to be sufficiently a matter of chance to constitute the scheme a lottery, when the receipt of the prize or gift was contingent upon the exhibitor's being in a mood to bestow it, and upon his approving the personal appearance of the holder of the ticket whose number he had announced.   Few persons who have witnessed a horse-race will, I think, hesitate to affirm that the success of any given horse is a more fortuitous event than such contingencies as these,    The physical condition of the horse and his rider, the fastenings of his shoes, the honesty of purpose that actuates his rider and his owner in running him, the state of the weather and the track, and these same circumstances in the case of every horse that races against him, are all matters about which the judgment of the outside better can avail him no more than the arithmetical calculation of chances can avail the dice-thrower.    They have just enough of the appearance of certainty to attract the confident, and, if he wins, he praises his skill, but, if he loses, he blames his luck.

There is, however, aside from the result of the race, another element of chance in these games, which is clearly pointed out in *Tollett* v. *Thomas*, *L. R.*, 6 *Q. B.* 514, and that is, the element which determines what the winner is to gain.    That element, in the " auction pool," depends upon how much others may bet against him, and, in the " French pool " and " combination pool," upon how many others may bet against him and how many others may bet as he does.    None of the betters, save the last one, can possibly learn these matters. I need not repeat what is said in the case cited, as to these ingredients making the transaction a game of chance.

I conclude, therefore, that the facts found contain every essential of a lottery, and that the business in which the defendant was engaged comes plainly within the animadversions of the court in *Den, ex dem. Wooden*, v. *Shotwell*, 4 *Zab.* 789, as " engendering that imprudent spirit of gambling which the prospect of adventitious gain usually excites, and having a direct tendency to produce those pernicious mischiefs in a community which the act for the suppression of lotteries was intended to prevent."

The judgment below should be affirmed, with costs.