LOUIS HOFFERMAN, Plaintiff, *v.* MAURICE SIMMONS, Property Clerk of the Police Department of the City of New York, Defendant.*

Municipal Court of New York, Borough of Brooklyn, First District April 2, 1941.

*Jerome J. Fendrick*, for the plaintiff.

*William C. Chanler, Corporation Counsel* [*Samuel Gold, Assistant Corporation Counsel*, of counsel], for the defendant.

*Affd., Appellate Term, Second Dept., N. Y. L. J. Dec. 9, 1941, p. 1889; motion for reargument or for leave to appeal to Appellate Division denied, Id. Dec. 27, 1941, p. 2147.

Ruvolo, J. Plaintiff brings this action to recover from the defendant, property clerk of the city of New York, the sum of $650.55 which he claims was unlawfully seized and is being wrongfully withheld from him, he being the lawful owner of the same.

There was only one witness at the trial, the plaintiff himself, and the facts are apparently conceded.

The plaintiff was a " bookmaker; " i. e., was engaged in the business of receiving bets upon the result of horse races. On September 3, 1940, he operated a gambling room at a considerable distance away from the race track, where there were some sixty-one persons who came to place bets with the plaintiff. The latter had come into the gambling room that morning with some $500 in his pocket, to be used for the purpose of paying off the bets in the event of reverses for him. Some of his sixty-one customers desired to place bets with him after the bank was opened and put their money on a table in front of him. The money thus placed on the table amounted approximately to $150.

Then came the police. Plaintiff was arrested, charged with a violation of section 986 and section 580 of the Penal Law, and all the money in his possession, including both the capital in his pockets and the bets placed in front of him, was taken from him and deposited with the defendant as property clerk.

Plaintiff was thereafter arraigned and he pleaded guilty. Whereupon he was fined fifty dollars and upon the payment of the fine was released.

Since then he has brought this action and demands the return of all the money taken from him, amounting to $650.55.

The defendant admits that it has no lawful claim to the $500 which were taken from the plaintiff's pockets at the time of the arrest and consents to judgment for that amount. It contends, however, that the balance of $150, which was placed on the table in front of him by the bettors, was gambling money, and the plaintiff is not entitled to its refund.

The question is, therefore, should plaintiff recover this balance?

At common law bookmaking was not a crime. What made it a crime was the enactment of the Hart-Agnew Law, chapter 507 of the Laws of 1908, now codified and known as section 986 of the Penal Law.

Previously, by the enactment of sections 345, 346 and 347 of chapter 676 of the Laws of 1881, now known as sections 977, 978 and 979 of the Penal Law, the Legislature had added to other penalties for gambling the provision for the destruction of all the means, implements and devices used in gambling.

These statutes are controlling upon the situation presented herein, and it is upon these sections that the defendant relies to sustain his contention.

These sections as amended and in effect at the time of the arrest read as follows:

" § 977. Seizure of gambling implements authorized. A person who is required or authorized to arrest any person for a violation of the provisions of this article, is also authorized and required to seize any table, cards, dice or other apparatus or article, suitable for gambling purposes, found in the possession or under the control of the person so arrested, and to deliver the same to the magistrate before whom the person arrested is required to be taken.

" § 978. Gambling implements to be destroyed or delivered to district attorney. The magistrate, to whom any thing suitable for gambling purposes is delivered pursuant to the last section, must, upon the examination of the defendant, or if such examination is delayed or prevented, without awaiting such examination, determine the character of the thing so delivered to him, and whether it was actually employed by the defendant in violation of the provisions of this article; and if he finds that it is of a character suitable for gambling purposes, and that it has been used by the defendant in violation of this article, he must cause it to be destroyed, or to be delivered to the district attorney of the county in which the defendant is liable to indictment or trial, as the interests of justice may, in his opinion, require.

" § 979. Gambling implements to be destroyed upon conviction. Upon the conviction of the defendant, the district attorney must cause to be destroyed every thing suitable for gambling purposes, in respect whereof the defendant stands convicted, and which remains in the possession or under the control of the district attorney."

Since these are penal statutes and are in derogation of the common law, they must be construed strictly rather than liberally, and we may not read into them anything not clearly contained in them.

By doing so we find that the word " money " has been scrupulously omitted. The statutes speak of " table, cards, dice or other apparatus or article suitable for gambling purposes." But none of these means money (*People* v. *Mettlemen,* 155 Misc. 761), and the conclusion is clear that money is not the subject of confiscation and destruction.

But the defendant goes further and claims authority to retain the money in issue under section 435–4.0 of the Administrative Code of the City of New York.

Even this does not help the contention of the defendant. In the first place the Administrative Code of the City of New York does not supersede the Penal Law, but is subject to it and must be read in conjunction with the superior statute. In the second place the Code itself clearly does not vest the defendant with the right to confiscate money representing bets placed with a bookmaker.

Paragraph 1 of subdivision a of section 435–4.0 simply enumerates the property which may be placed in the custody of the property clerk, including " all property taken from the person of a prisoner " or " which may come into the possession of the police." Paragraph 2 of subdivision a sets forth the manner of registration and safeguarding the property so received by the property clerk. Paragraph 3 of subdivision a provides for the bonding of the property clerk by the police commissioner. Subdivision b provides for the return of the property taken from a prisoner when acquitted. Subdivision c provides for the disposition of property claimed by persons other than the prisoner. Subdivision d provides for the advertising of the disposition of unclaimed lost or stolen property. Subdivision e provides for the disposition of stolen and unclaimed property after the expiration of the period set forth in the advertisement. Subdivision f provides for the keeping of property for use as evidence in the trial of any crime.

In none of these sections can the court find any solace for the defendant. Since the plaintiff pleaded guilty and paid the penalty for his crime, subdivision b does not apply nor does subdivision c, for the ownership of the money is not disputed, save by the defendant who seeks to keep it, and there is no adverse claim to it as against the plaintiff, other than by the same defendant who says that the money represents " the proceeds of crime." But even if we assume that this paragraph does apply, the defendant has only the right to hold the money " until lawfully disposed of." This certainly does not mean confiscation.

Subdivision d is merely procedural in nature and does not affect this situation.

Subdivision e completely destroys defendant's contention: *First,* because it has no reference to money except where it has not been claimed within a period of six months from the date of the conviction; *second,* because its disposition has not been advertised; and *third,* because the section has reference to property stolen or embezzled.

Forgetting for the time being the matter of the money not being unclaimed and the fact that its disposition has not been advertised, the important issue is that the money was not stolen or embezzled. By no stretch of the imagination can we say that money deliberately

handed over to the bookmaker by the bettor is stolen or embezzled money. The bettor may be unwise, morally corrupt or even criminal in turning over the money; but certainly he is not the victim of larceny in any form.

It is true that, in view of the odds in favor of the bookmaker, his knowledge of conditions and ignorance of the bettors, we colloquially term horse-betting as " larceny," " highway robbery," " taking candy from a baby," etc. But there is a vast difference between that and " larceny " as defined in the Penal Law.

It should be kept in mind that this plaintiff was convicted of bookmaking and that the essence of his crime was in pursuing his business *outside the confines of a race track*. Placing or taking a bet on a horse race, or making book, is not of itself a crime. Such a thing is being done lawfully by millions of persons every year at a race track. What makes either of those things unlawful is the distance from a race track. Hence the punishment is directed against the bookmaker *for being outside of the race track*. There is no moral turpitude involved, no *malum per se;* only a *malum prohibitum* far removed from any thought of stealing. So that in this sense at least, the proceeds of a gambling bet cannot even be called " the proceeds of crime."

We can find no reason, therefore, for sustaining the contention of the defendant and must award judgment for the full relief demanded in the complaint.