31 So.2d 753

OPINION OF THE JUSTICES.
No. 83.

Supreme Court of Alabama.
Sept. 8, 1947.

LAWSON, LIVINGSTON, and SIMPSON, JJ., dissenting.

House Resolution.

Be it resolved by the House that the Supreme Court of Alabama be requested to render an advisory opinion as to whether or not House Bill No. 854 violates Section 65 of the Constitution.

The following is the title of House Bill No. 854:

A Bill to be entitled An Act To provide for and create the Alabama State Racing Commission for the regulation, licensing, and supervision of horse racing, dog racing, and wagering thereon; to prescribe its composition, appointment, powers and duties; to provide for the regulation and licensing of horse racing, dog racing, race meetings, and the wagering on the results thereof; to provide for and regulate the pari-mutuel or certificate method of wagering and bookmaking wagering within the enclosure of the licensed race tracks; and to provide certain penalties for the violation of this Act and for other purposes relative thereto.

Section 21 of the Bill is as follows:

If any section or subsection of this Act, or any part thereof, is, for any reason, held unconstitutional, such decision shall not affect the validity of the remaining portions of such Act. It is hereby declared that this Act and each section, subsection, sentence, clause and phrase thereof would have been enacted irrespective of the fact that any one or more sections, subsections, sentences, clauses and phrases be declared unconstitutional.

To the House of Representatives

Montgomery, Alabama

Sirs:

Your resolution No. 93 directs our attention to the question of whether House Bill 854 now pending in the legislature is in conflict with Section 65 of the Constitution of Alabama which reads as follows:

"The legislature shall have no power to authorize lotteries or gift enterprises for any purposes, and shall pass laws to pro-

[1] Ante, p. 511.

hibit the sale in this state of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery; and all acts, or parts of acts heretofore passed by the legislature of this state authorizing a lottery or lotteries, and all acts amendatory thereof, or supplemental thereto, are hereby avoided."

House Bill No. 854 attempts to legalize wagering on horse races and dog races "under the form of mutuel wagering by patrons, known as the Pari-Mutuel Wagering and the book-making form of wagering." The bill does not define "Pari-Mutuel Wagering" and "the book-making form of wagering". However, "Pari-Mutuel Wagering" is a matter of common knowledge and is described in the authorities with reference to horse races, as will be shown. The same description applies to dog races. The legislature has classed both methods, that is "Pari-Mutuel Wagering" and the "book-making form of wagering" as mutuel wagering. Since under the language of the act the legislature has placed both methods in the same category, the underlying principle is the same in both cases although there may be some differences in detail.

In the operation of a pari-mutuel system, the betting or wagering is limited to the particular race to be run. Prior to the running of the race the booths of the ticket sellers are opened and the public invited to place their bets or wagers upon the winning horses of the next race. Usually persons can bet severally in denominations of $2, $5 and $10 each on "straight," "place," or "show," as used in racing parlance to indicate the position of the horses at the end of the race as coming in either first, second, or third, respectively. There is no limit to the number of such bets any individual might make if he has the money, inclination and time. A device known as a pari-mutuel machine is placed behind each ticket seller and has the appearance of a blackboard, with the name and number of each horse which is to run in the next race. Immediately under each name and number is an open space wherein numbers can be registered. As bets are placed with the ticket seller, the operator of this machine registers the bet, and the indicator under the name and number of each horse shows the number of bets placed upon each horse respectively. As bets are placed, the better is given a ticket indicating the number of the horse upon which he placed his money, such number corresponding to the number beside the horse's name on the face of the machine. It also indicates the amount of the bet and the position the better has indicated the horse will take at the end of the race, that is, whether "straight," "place," "show" or combination of such places. Immediately before the race is started, ticket selling is stopped by the officials of the racing association, and the officials of the pari-mutuel system compute the total amount of money placed in the pool. A commission in a certain percent of the pool is deducted. Computation is then made to show the ratio the bets on each horse bear to the whole amount of money in the pool and thus is indicated the odds in favor of or against each horse. The machine records the number of tickets issued on each horse and the total of the tickets so issued on all horses in the race. The odds are indicated and determined on the amount of money placed and the odds or the amount to be paid on any horse cannot be determined until after the last ticket on the race has been purchased. When the race is finished the computers of the pari-mutuel system make announcement of the amount that will be paid on each bet upon the horse coming in first, second or third, and public announcement is made by means of a large blackboard of the number of the horses winning, together with the odds to be paid the holders of tickets who have placed their money on such winners. While there may be other details, the foregoing is sufficient for the purposes of this discussion. Utah State Fair Ass'n v. Green, 68 Utah 251, 249 P. 1016.

Section 65 of the Constitution of 1901 is identical with Art. 4, Section 26 of the Constitution of 1875. In construing § 26 of the Constitution of 1875, this court in Johnson v. State, 83 Ala. 65, 3 So. 790, 791, said:

"This construction is in full harmony with the policy of the constitution and laws of Alabama prohibitory of the vicious system of lottery schemes and the evil practice of gaming, in all their protean shapes, tending, as centuries of human ex-

perience now fully attest, to mendicancy and idleness on the one hand, and moral profligacy and debauchery on the other. No state has more steadfastly emphasized its disapprobation of all these gambling devices of money-making by resort to schemes·of chance than Alabama. For more than 40 years past—we may say from the organization of the state, with some few years of experimental leniency—the voice of the legislature has been loud and earnest in its condemnation of these immoral practices,· now deemed so enervating to the public morals."

In Buckalew v. State, 62 Ala. 334, 34 Am. Rep. 22, this court took a restricted view as to what constitutes a lottery. However, in Loiseau v. State, 114 Ala. 34, 22 So. 138, 62 Am.St.Rep. 84, this court adopted a broader conception of the term "lottery" and in doing so expressly modified the holding in Bucklew·v. State, supra.

In Grimes v. State, 235 Ala. 192, 178 So. 73, 74, this court in defining a lottery said:

"Without dispute a lottery has three elements: (1) A prize, (2) awarded by chance, (3) for a consideration. * * *"

In Try-Me Bottling Co. et al. v. State, 235 Ala. 207, 178 So. 231, 234, this court expressly called attention to the broad conception set forth in § 65 showing that the prohibition is not only against lotteries but also against any scheme in the nature of a lottery. The very purpose of this broad declaration was to put a ban on any effort at evasion or subterfuge. Whatever may be the view of the courts of other states on the subject of lotteries, these cases show that this court has adopted a broad view of the meaning of the constitutional provision which does not admit of quibbling or. narrow construction. We here quote the language of this court in Try-Me Bottling Co. v. State, supra, as follows:

"* * * In this State, therefore, the public policy is emphatically declared against lotteries or any scheme in the nature of a lottery, both by Constitution and by statutes."

We consider that there can be no question but that the first and third elements, that is a prize and a consideration, are present in the plan for· gambling on horse races which House Bill No. 854 attempts to authorize.

Whether the second element is present,· that is whether the prize is awarded by chance, presents a serious question on which the courts are divided, there being authority to support the view that the form of wagering referred to in House Bill No. 854 is a lottery. 34 Am.Jur. p. 660; State v. Lovell, 39 N.J.L. 458. See also State v. Ak-Sar-Ben Exposition Co., 118 Neb. 851, 226 N.W. 705; Id., 121 Neb. 248, 236 N.W. 736. On the contrary there is substantial authority to support the view that the form of wagering referred to in House Bill No. 854 is not a "lottery." People v. Monroe, 349 Ill. 270, 182 N.E. 439, 85 A.L.R. 605; Rohan v. Detroit Racing Ass'n, 314 Mich. 326, 22 N.W.2d 433, 116 A.L.R. 1246; Commonwealth v. Kentucky Club et al., 238 Ky. 739, 38 S.W.2d 987; Utah State Fair Ass'n v. Green, supra. The foregoing decisions in Kentucky and Utah should be considered in the light of the proceedings in the constitutional conventions in those states when the constitutional provisions in those states were adopted. These decisions disclose that both the Kentucky and Utah courts were persuaded from a review of the discussions in the constitutional conventions of those states that the matter of horse racing was not to be included in any such constitutional prohibitions. The general theory of these authorities is that the form of wagering sought to be legalized in the present bill does not make the betting a mere game of chance since the better can exercise his reason, judgment and discretion in selecting the horse he thinks will win and that horse racing, like foot racing or boat racing, is a game of skill and judgment and· not a game of chance. It is pointed out that in a horse race the winner is not determined by chance alone as the condition, speed and endurance of the horse and the skill of the rider are factors affecting the result of the race.

Upon consideration of the matter, however, we conclude that the element of chance is so present in the form of pari-mutuel betting as to make that system with its paraphernalia, etc., a "lottery" within the meaning of the constitution of this state. It is true that the result of the race may be determined by the qualities of the horse and rider, but the amount which the better will receive, if the horse of his

choice wins, is purely a matter of chance. The following authorities demonstrate the presence of the element of chance in the pari-mutuel form of betting.

In Tollett v. Thomas, L.R., 6 Q.B. (Eng.) 514, a case referred to with approval by this court in State v. Stripling, 113 Ala. 120, 21 So. 409, 36 L.R.A. 81, the court clearly shows the presence of the element of chance. We quote from that decision as follows:

"In the present instance, an element of chance is introduced, which though not having any reference to the main event—namely, the result of the race in the winning of a particular horse—is yet essential to making the wager laid upon the winning horse profitable to the better. The winning of the horse betted upon is of course the primary condition of the wager being won; but whether the winning of the wager shall be productive of any profit to the winner, and more especially what the amount of that profit shall be, depends on the state of the betting with reference to the number of bets laid on or against the winning horse—a state of things fluctuating from one minute to another throughout the duration of the betting. Now this being something wholly independent of the issue of the race, as well as of the will and judgment of the winner, depending as it does, on the will or caprice of the other persons betting, is a matter obviously of uncertainty and chance to the individual better, more especially in the early stages of the betting. There being, then, this element of chance in the transaction among the parties betting, we think it may properly be termed, as amongst them, a game of chance."

In the case of Pompano Horse Club v. State, 93 Fla. 415, 111 So. 801, 812, 52 A.L.R. 51, it was held that the pari-mutuel system of betting on horse races was a violation of a statute prohibiting a game of chance. The Florida court said:

"The question before us is whether or not the buying, selling, and redeeming of certificates, in the manner and for the purpose stated, constitutes gambling, or a game of chance. Regardless of whether horse racing, within itself, is a 'game' or a 'sport,' or, if a game, whether it be one of 'skill' or of 'chance'—when a group of persons, each of whom has contributed money to a common fund and received a ticket or certificate representing such contribution, adopt a horse race, the result of which is uncertain, as a means of determining, by chance, which members of the group have won and which have lost upon a redivision of that fund, each contributor having selected a stated horse to win such race, the redeemable value of the certificates so obtained and held by the contributors of such fund being varied or affected by the result of such race, so that the value of some is enhanced, while that of others is reduced or destroyed, the original purchase price of all having been the same, those who chose the winning horses being paid from the fund so accumulated more than they contributed thereto, by dividing amongst them the money contributed by those who chose losing horses and who therefore receive nothing, that process becomes a 'game of chance,' and those who buy, sell, or redeem such certificates, for the purposes and in the manner hereinabove stated, are 'engaged' in such game within the contemplation of Section 5639 [F.S.A. § 823.05], supra."

Though it may be difficult to consider the act in any manner other than a comprehensive plan to establish a lottery, or to use the language of § 65 of our Constitution: "A scheme in the nature of a lottery," yet in view of the very broad provisions of § 21 of the act, usually referred to as the saving clause, it may be well to observe that we, of course, confine our answer to the specific inquiry as to the violation of § 65 of our Constitution. As we have observed, we consider the act does violate § 65 of our Constitution in the manner indicated, and having so answered no further duty rests upon us, and our response is accordingly so limited.

Respectfully submitted,
LUCIEN D. GARDNER
Chief Justice.
JOEL B. BROWN
ARTHUR B. FOSTER
DAVIS F. STAKELY
Associate Justices.

FOSTER, Justice (concurring).

Our answer to this inquiry is not controlled by the presumption that the act is constitutional, and the principle that we will not declare it unconstitutional unless it is so clear as to dispel all reasonable doubt. In re Opinions of the Justices, 209 Ala. 593, at page 598, 96 So. 487, at page 493, "Third." We are not dealing with an act, but a proposed act. We are not dealing with a case in court in which there appears a statement of facts whose effect upon the rights of persons is controlled by an enactment of the Legislature. We will presume that the Legislature meant only to do what it had authority to do under the Constitution, if we can do so consistently with the terms used, when we are dealing with a concrete situation.

But the question here involved is whether the proposed act would by its terms authorize a lottery, gift enterprise or scheme of that nature to be conducted though it may also authorize something not prohibited by § 65 of the Constitution. If the terms used in the proposed act are broad enough to be thus inclusive it would to that extent violate § 65 of the Constitution. It is not necessary that we find as a fact that a scheme such as is described in the majority opinion is precisely what is meant by the terms set forth. But if those terms are broad enough to include such a scheme and that scheme is prohibited by § 65, then an opinion must follow that because it is so broad, and to that extent it violates § 65 of the Constitution.

I am willing to concede that it would not violate § 65 of the Constitution for the Legislature to legalize a bet simply made upon the outcome of a horse or dog race or a game whose result is wholly determined by skill, judgment or discretion. But when either the winner or the amount of his gain is determined by chance not involving skill, judgment or discretion, the bet as a whole should be treated as controlled by chance. An act could not authorize a bet partly violative of the Constitution and partly not so violative, when the two elements unite in fixing the result.

I think the majority opinion fully supports the conclusion that the proposed act authorizes conduct violative of § 65 of the Constitution to the extent at least that the amount which the winner takes may be dependent upon chance not involving skill, judgment or discretion.

LAWSON, Justice.

I do not think the Justices should respond to your inquiry for the reason hereinafter set out.

Section 65 of the Constitution of 1901, which is the only section here involved, does not deprive the legislature of the right to legalize some forms of gambling. State v. Stripling, 113 Ala. 120, 21 So. 409, 36 L.R.A. 81. I do not understand my brothers of the majority to contend otherwise. It only takes away from the legislature the right to legalize those forms of gambling known as lotteries, gift enterprises, and schemes in the nature of lotteries.

Without question House Bill 854 purports to legalize two forms of gambling, namely, wagering on dog and horse races under the "pari-mutuel system" and wagering on dog and horse races under the "bookmaking system." If such forms of wagering are included within the definition of a lottery, gift enterprise, or scheme in the nature of a lottery, then said House Bill 854 violates § 65 of the Constitution to the extent that it attempts to legalize such forms of gambling. If not, then § 65 of the Constitution is not contravened.

What is the form of gambling which House Bill 854 designates as a "pari-mutuel system"? How does it operate? The same questions may be asked as to the bookmaking system. House Bill 854 does not define or explain either of these forms of wagering and no information or facts have accompanied your inquiry which can be of assistance to the members of this court.

It is our duty to sustain an act of the legislature unless it is clear beyond a reasonable doubt that it is violative of the fundamental law, the Constitution. So said the present Chief Justice of this court in the case of State v. Murphy, 237 Ala. 332, 186 So. 487, 489, 121 A.L.R. 283, wherein the present liquor law was upheld. In the case last above cited it was also said: "All that the legislature is not forbidden to do

by the organic law, state or federal, it has full competency to do. And in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a co-ordinate branch of the government." True, your, present inquiry does not concern an act which has been passed by the legislature. It involves a bill which is now pending. But the answer to your question must be approached in the same manner as if the bill had been passed by both houses. Such was the holding in Re Opinion of the Justices, Ala.Sup., 31 So.2d 721.[1] We are dealing with a question of power of a coordinate branch of government and unless it clearly and plainly appears that the Constitution has deprived the legislative department of the power to enact into law that which is proposed in a pending bill we should not so conclude. To do so in my judgment constitutes usurpation by this Court of power which belongs to the legislative branch of government.

The majority opinion finds that wagering on horse races under the so-called "pari-mutuel system" is done in the manner set out in an opinion of the Supreme Court of Utah in the case of Utah State Fair Ass'n et al. v. Green et al., 68 Utah 251, 249 P. 1016, although they are not willing to follow the conclusion reached by the Utah court that an act legalizing such form of gambling did not violate a provision of their Constitution which is much broader than § 65 of our Constitution. It may be that the method set out in the Utah case is correct. But I think that when we are called upon to annul an act of a coordinate branch of government we should not enter into the field of speculation or conjecture even to the slightest degree.

In so far as the so-called bookmaking system of wagering is concerned, the opinion of the majority of the Justices clearly illustrates the fallacy of trying to pass on a constitutional question without sufficient facts. The opinion of the majority assumes that the "bookmaking system" is the same as the "pari-mutuel system." Perhaps that is what the act contemplated. I do not know. The Justices who concurred in the majority opinion do not know. True, bookmaking is a form of gambling. But the question is, is it a lottery, a gift enterprise, or a scheme in the nature of a lottery? Before so concluding there should be facts before the members of the court upon which we can base our conclusion. That it is very hazardous to guess that the bookmaking system of wagering is the same as the pari-mutuel is conclusively demonstrated by reference to the following cases which deal in varying ways with the term "bookmaking." People of State of New York v. Bennett, C.C., 113 F. 515; People on Complaint of Lennon v. Camio, 165 Misc. 134, 300 N.Y.S. 264; Murphy v. Board of Police, 11 Abb.N.C., N.Y., 337, 63 How.Prac. 396; People ex rel. Lichtenstein v. Langan, 196 N.Y. 260, 89 N.E. 921, 25 L.R.A., N.S., 479, 17 Ann.Cas. 1081; State ex inf. Hadley v. Delmar Jockey Club, 200 Mo. 34, 92 S.W. 185, 98 S.W. 539; People v. Laude, 81 Misc. 256, 143 N.Y.S. 156; Ex parte Hernan, 45 Tex.Cr.R. 343, 77 S.W. 225; People ex rel. Jones v. Langan, 132 App.Div. 393, 116 N.Y.S. 718; People ex rel. Shane v. Gittens, 78 Misc. 7, 137 N.Y.S. 670; People v. Fallon, 152 N.Y. 1, 46 N.E. 302, 37 L.R.A. 419; Spies v. Rosenstock, 87 Md. 14, 39 A. 268; Ullman v. St. Louis Fair Ass'n, 167 Mo. 273, 66 S.W. 949, 56 L.R.A. 606; People v. Solomon, 174 App. Div. 144, 160 N.Y.S. 942; Board of Com'rs of City of Newark v. Grodecki, 33 A.2d 115, 21 N.J.Misc. 241; State v. Morano, 134 N.J.L. 295, 47 A.2d 419; Odle v. State, 139 Tex.Cr.R. 288, 139 S.W.2d 595; Shillitani v. Valentine, 184 Misc. 77, 53 N.Y.S. 2d 127; Armstrong Racing Publications v. Moss, 181 Misc. 966, 43 N.Y.S.2d 171; Hofferman v. Simmons, 177 Misc. 962, 32 N.Y.S.2d 244; State v. Baldinotti, 127 N.J.L. 46, 21 A.2d 291; State v. Morano, 133 N.J.L. 428, 44 A.2d 786.

Although the rendering of advisory opinions by the Justices is not a judicial function and although such opinions are not conclusive or binding upon the Governor or the House or Houses propounding inquiries or the Justices responding thereto (In re Opinions of the Justices, 209 Ala. 593, 96 So. 487), I would have pre-

---

[1] Ante, p. 511.

ferred that we return your request for advisory opinion unanswered with the explanation that sufficient facts did not accompany it to enable the members of the court to express an intelligent opinion as to the constitutionality of said House Bill 854.

Since the majority of the Justices have responded to your inquiry and have held that House Bill 854 is unconstitutional in so far as it purports to legalize wagering on horse and dog races, I feel constrained to make the following observations, some of which are based on the factual findings of the majority opinion.

Assuming that the pari-mutuel system of betting on horse races is in accordance with the method set out in the majority opinion, there is no case from this jurisdiction which supports the conclusion of the majority that such method is a lottery or a scheme in the nature of a lottery.

True, we have cases wherein the evils of gambling have been preached. Johnson v. State, 83 Ala.. 65, 3 So. 790, cited by the majority, is one of them. It has no other bearing on the question presented in this inquiry.

The majority opinion quotes from the case of Try-Me Bottling Co. et al. v. State, 235 Ala. 207, 178 So. 231, to the effect that the public policy of this state is against lotteries or any scheme in the nature of a lottery. That is unquestionably true. But that case does not in any wise cast light on the question as to whether or not the pari-mutuel system of wagering on horse races is a lottery or a scheme in the nature of a lottery.

There is a quotation in the majority opinion from the case of Grimes v. State, 235 Ala. 192, 178 So. 73, 74, which is as follows: "Without dispute a lottery has three elements: (1) A prize, (2) awarded by chance, (3) for a consideration. * * *"

The quotation, however, is not subject to the construction that every game or sport wherein. an element of chance is involved is a lottery or a scheme in the nature of a lottery. The question in Grimes v. State, supra, was not whether the prize was awarded by chance, but whether the ele-

ment of a consideration was present. Such has been the situation in all the Alabama cases which have come to my attention. In none of them has the court been called upon to pass on the question as to whether or not a lottery was shown to exist where the element of skill entered into the determination of the winner.

In Loiseau v. State, 114 Ala. 34, 22 So. 138, 139, 62 Am.St.Rep. 84, appears the following definition of a lottery: "Whatever may be the name or character of the machine or scheme, if in its use a consideration is paid, and there is gambling, the hazarding of small amounts to win larger, the result of winning or losing to be determined by chance, *in which neither the will nor skill of man can operate to influence the result,* it is a determination by 'lot,' within the comprehensive word 'lottery' used in the constitution of this state."

Hence, in so far as the rule in this jurisdiction is concerned, in order for the pari-mutuel system of betting on horse races to be a lottery the result of winning or losing must be determined by chance, in which neither the will nor skill of man can operate to influence the result. Certainly chance must be the dominant factor.

Betting on horse races has been held to be a game within the meaning of the statute against gaming (State v. Stripling, 113 Ala. 120, 21 So. 409, 36 L.R.A. 81) but such holding is not opposed to the view that the result of winning or losing a bet on a horse race is not determined alone by chance, for the will and skill of the rider or driver and the condition and speed of the horse are prominent factors which enter into the result. Such seems to be unquestionably the prevailing opinion in this country. I do not understand the opinion of the majority to hold to the contrary.

If I understand the majority opinion correctly, it holds that wagering on a horse race under the pari-mutuel system is a lottery or scheme in the nature of a lottery because the amount which the better will receive, if the horse of his choice wins, is purely a matter of chance.

In support of this view the majority opinion cites State v. Lovell, 39 N.J.L. 458, and

Tollett v. Thomas, L.R. 6 Q. B. 514 (English, 1871). Reference is made also to the case of State v. Ak-Sar-Ben Exposition Co., 118 Neb. 851, 226 N.W. 705. The case of State v. Lovell, supra, was decided in 1877 and does support the conclusion reached by the majority. However, it is no longer operative in the state of New Jersey inasmuch as there has been incorporated into the constitution of that state a provision which permits the legislature to legalize pari-mutuel betting on horse races. (Adopted June 20, 1939, as Art. 4, Sec. VII, Par. 2, N.J.S.A.). The English case of Tollett v. Thomas, supra, was decided in 1871 and also supports the conclusion reached by the majority of the Justices. In so far as my research discloses the English case has been followed in this country on the point here involved only in the case of State v. Lovell, supra. The Nebraska case to which the majority opinion refers held that the essential ingredients of a lottery—consideration, chance, and a prize—were embraced in the pari-mutuel system and forbidden by the laws of that state. But the distinction between a lottery and other methods of gambling was not discussed because the constitution and laws of that state applied equally to both subjects. But Section 24, Art. III of the Nebraska Constitution as now amended permits legislation legalizing pari-mutuel wagering on horse races.

The majority opinion also quotes at length from the case of Pompano Horse Club v. State, 93 Fla. 415, 111 So. 801, 52 A.L.R. 51. I am not in disagreement with what was said in that case if I understand it correctly, namely, that betting on horse races under the pari-mutuel system constitutes gambling. It does not hold that gambling in such form constitutes a lottery. It is interesting to note that in 1931, two years after the decision in the case of Pompano Horse Club v. State, supra, the legislature of Florida adopted what is now Chapter 550, Florida Statutes, 1941, F.S.A., wherein was established a State Racing Commission, whose duties and powers were there prescribed. Under that chapter the racing of dogs and horses in the State of Florida was legalized under the pari-mutuel system of betting on the races, with certain terms, conditions, and limitations fixed in the statute. In 1935 the legislature of Florida amended certain sections of Chapter 550, supra, so as to broaden the scope of the act and the powers of the State Racing Commission. Florida has a constitutional provision which provides as follows: "Lotteries are hereby prohibited in this State." Article 3, § 23, Constitution of the State of Florida. In spite of what was said in the case of Pompano Horse Club v. State, supra, according to my research, pari-mutuel system of betting on horse races and dog races is permitted in the State of Florida at the present time. I do not find any decision wherein the pari-mutuel system has been held by the courts of Florida to constitute a lottery. In my opinion the case of Pompano Horse Club v. State, supra, does not support the conclusion of the majority, but on the contrary, when considered in the light of subsequent developments, merely emphasizes that there is a broad distinction between gambling and a lottery and that while betting on horse races under the pari-mutuel system is gambling it does not follow that such gambling is in form a lottery. See Lee v. City of Miami, 121 Fla. 93, 163 So. 486, 101 A.L.R. 1115, for discussion of distinctions.

On the contrary, the following cases hold that wagering on horse races under the pari-mutuel system is not a lottery within the meaning of constitutional provisions prohibiting the legislature from authorizing lotteries. Utah State Fair Ass'n v. Green, 1926, supra; People v. Monroe, 1932, 349 Ill. 270, 182 N.E. 439, 85 A.L.R. 605; Commonwealth v. Kentucky Club et al., 1931, 238 Ky. 739, 38 S.W.2d 987; Rohan v. Detroit Racing Ass'n, 1946, 314 Mich. 326, 22 N.W.2d 433.

Of course, the cases from other jurisdictions are persuasive here only to the extent that the constitutional provisions in the other states are similar to § 65 of our Constitution. In my judgment all the constitutional provisions involved in the cases last above cited are as broad, if not broader, than § 65, supra, with the exception of the provisions in the Michigan and Illinois Constitutions, which have no provision similar to that part of § 65 of our Consti-

tution which provides that the legislature must pass laws prohibiting the sale of tickets in any scheme in the nature of a lottery. But the reasoning in those cases is so clear that I think it applicable here. Also see People v. Postma, 1945, 69 Cal. App.2d Supp. 814, 160 P.2d 221; Engle v. State, 1939, 53 Ariz. 458, 90 P.2d 988.

On the one hand, there are two cases which appear to support the conclusion of the majority, one of them an English case decided in 1871 and which the Supreme Court of Utah refused to follow in the case of Utah State Fair Ass'n v. Green, supra; and the other a New Jersey case decided in 1877, which is no longer operative in that state by virtue of the constitutional amendment subsequently adopted, and which the Supreme Court of Kentucky refused to follow in the case of Commonwealth v. Kentucky Club et al., supra. On the other hand are the cases cited in the last paragraph above. They have all been decided in recent years and in my judgment state what may be termed the correct American rule.

The reasoning of those cases may be summarized as follows: In a lottery the winner is determined by lot. Lot or chance is the determining factor and a participant has no opportunity to materially exercise his reason, judgment, sagacity, or discretion. In a horse race the winner is not determined by chance alone, as the condition, speed, and endurance of the horse and the skill and management of the rider are factors affecting the result of the race. The better has the opportunity to exercise his judgment and discretion in determining the horse on which to bet. The pari-mutuel method or system of betting on a horse race (as described in the opinion of the majority) does not affect or determine the result of the race. The machine is no doubt a convenient mechanical device for recording and tabulating information regarding the number and amount of bets and from this information the betting odds on the horse can be calculated and determined from time to time during the process of betting. The recording and tabulating of bets could be done manually by individuals, but the pari-mutuel machine is a more convenient and faster method. The fact that a better cannot determine the exact amount of money he may win at the time he places his bet because the odds may change during the course of betting on a race does not make the betting a mere game of chance, since the better can exercise his reason, judgment, and discretion, in selecting the horse he thinks will win. Horse racing, like foot races, boat races, football, and baseball, is a game in which the skill and judgment of man enter into the outcome to a marked degree and is not a game where chance is the dominant factor.

In my opinion the law is well settled in this country that pari-mutuel system of betting (as described in the opinion of the majority) is not a lottery or a scheme in the nature of a lottery. I am of the opinion, therefore, that House Bill 854 does not violate § 65 of the Constitution of Alabama in so far as it purports to legalize wagering on horse races under the pari-mutuel system of betting as described in the majority opinion.

Certain it is that I cannot conclude to the contrary on the record before me. To do so is to completely ignore the rule long existing in this state to the effect that this court will indulge every presumption in favor of the constitutionality of an act of the legislature. It should be remembered that the discretion of the legislature is very large in the exercise of the police power in determining what the interests of the public require and what measures and means are necessary for the protection of such interests. It is for the legislature to determine when conditions exist calling for the exercise of the police power and it is not for this court or the members thereof to inject their personal feelings as to the wisdom of legislation into the determination of a highly important constitutional question. The evils of gambling have long been known and recognized by the people of this state. But I think it is for the legislature to determine whether or not it is to the best interests of the people of this state that betting on horse races under the pari-mutuel system be permitted. The question we have been asked is whether the legislature has the power to legalize such form of gambling, not whether such form of gambling is to the best interests

of the people of this state. That is a legislative function pure and simple.

I must respectfully decline to express an opinion as to whether or not House Bill 854 violates § 65 of the Constitution in so far as it seeks to legalize betting on dog races under the pari-mutuel system. The majority opinion merely sets out the method of betting on horse races under such system. It may be that betting on dog races is done in the same manner as in horse races. But some of the cases from other jurisdictions disclose a distinction between horse racing and dog racing. In view of the fact that we have no facts before us relating to this question, I must decline to express an opinion thereon.

For the same reason I must decline to express an opinion as to whether or not House Bill 854 violates § 65 of the Constitution in so far as it seeks to legalize the "bookmaking system" of betting on horse and dog races. I have no facts before me that show how such wagering is accomplished and there are no facts in the majority opinion bearing thereon.

SIMPSON, Justice.

I concur in the foregoing opinion of Justice LAWSON.

LIVINGSTON, Justice.

Because of the factual elements involved I seriously doubt the advisability of attempting to answer the inquiry. But conceding that "Pari-mutuel wagering" and the "bookmaking form of wagering" has been correctly defined, I do not think either system constitutes a lottery within the meaning of § 65 of the 1901 Constitution of Alabama. We are not here concerned with what constitutes gambling or wagering.

In the first place I do not think § 65, supra, prohibits the authorization of schemes in the nature of a lottery. It does provide that the Legislature "shall pass laws to prohibit the sale in this state of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery." This provision is mandatory but not self executing. If the Legislature saw fit not to pass such laws there is no authority to compel it to do so. But, be that as it may,

I do not think House Bill 854 authorizes a scheme in the nature of a lottery.

All the authorities agree that the three essential elements of a lottery are: consideration, prize, and chance. Under the system or scheme provided for in House Bill No. 854 the elements of consideration and prize are present. "Chance, as one of the elements of a lottery, has reference to the attempt to attain certain ends, not by skill or any known or fixed rules, but by the happening of a subsequent event, incapable of ascertainment or accomplishment by means of human foresight or ingenuity. * * * If merit or skill play any part in determining the distribution, there is no lottery." 34 Am.Jur. p. 649, § 6.

It seems to be conceded that horse racing involves merit and skill.

It may be true that under the pari-mutuel system of wagering, the final odds are determined, in a measure, by chance. But the winning or losing is not determined by chance, but by the merit, will, condition and skill of the horse and rider or driver. The race itself is the determining factor as to whether the better wins or loses. And so far as I know, the same may be said of dog racing except, of course, a dog has no rider or driver.

In my opinion House Bill No. 854 does not violate § 65 of the 1901 Constitution of Alabama. The authorities cited in the opinion of Mr. Justice LAWSON fully sustain this view. I deem it unnecessary to cite them here.