251 So.2d 751

**OPINION OF THE JUSTICES.**

**No. 205.**

Supreme Court of Alabama.

Aug. 16, 1971.

The House of Representatives propounded two questions to the Justices of the Supreme Court. One concerned House Bill 1531; the other House Bill 1532. The question as to each Bill was: did Section 65 of the Constitution of Alabama prohibiting the Legislature from authorizing lotteries or gift enterprises prohibit the Legislature from authorizing dog racing with a pari-mutuel system of wagering. A majority of the Justices were of the opinion that the Act did not offend Section 65 of the Constitution in that the system of pari-mutuel wagering provided for in the Act did not constitute a lottery or gift enterprise.

Questions answered.

To the Members of the House of Representatives
State Capitol
Montgomery, Alabama

Sirs and Madam:

House Resolution No. 113 requests the opinion of the Justices as to whether the provisions of House Bill 1531 or House Bill 1532 controvert the provisions of § 65 of the Constitution of Alabama. The first of these bills is a local bill to be applicable only to Jefferson County. The second is a general bill, containing a "county option" feature. Both would authorize dog racing with a pari-mutuel system of wagering. The question is whether or not these bills contravene the constitutional restriction which is as follows:

"The legislature shall have no power to authorize lotteries or gift enterprises for any purposes, and shall pass laws to prohibit the sale in this state of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery; and all acts, or parts of acts heretofore passed by the legislature of this state, authorizing a lottery or lotteries, and all acts amendatory thereof, or supplemental thereto, are hereby avoided."

The question presented then is whether or not the pari-mutuel system of wagering on dog races as authorized by these bills constitutes a lottery.

Twice in the past the legislature has called on the Justices for an opinion on essentially this same point. The first came in

1947 (Opinion of the Justices No. 83, 249 Ala. 516, 31 So.2d 753). At that time four Justices felt that the system of pari-mutuel wagering involved in the bill under study constituted a lottery in violation of the Constitution. Three Justices thought otherwise.

In 1961 (Opinion of the Justices No. 170, 272 Ala. 478, 132 So.2d 142) the Justices were again called upon for an opinion as to whether a bill authorizing pari-mutuel wagering on dog races would be in violation of § 65 of the Constitution. At that time one of the Justices declined to answer the question and the remaining six were equally divided—three expressing the opinion that it did not, and three expressing the opinion that it did.

In the 1947 Opinion of the Justices (249 Ala. 516, 31 So.2d 753), Justice Lawson clearly and cogently demonstrated the difference between a lottery and gaming. No useful purpose would be served by any further elaborations of Justice Lawson's full discussion of the questions involved which would seem to dictate the conclusion reached by him. We are in full accord with the views expressed by Justice Lawson. There is no question but what pari-mutuel wagering is gambling, but the Constitution does not restrict the legislature in its authority to authorize gambling. It merely says that the legislature shall not authorize a lottery. The elements of a lottery have repeatedly been defined as: "(1) A prize, (2) awarded by chance, (3) for a consideration. * * *" Grimes v. State, 235 Ala. 192, 178 So. 73 (1937). As Justice Lawson pointed out in 1947, the winner of a dog race is not determined by chance. A significant degree of skill is involved in picking the winning dog, such factors as weight, paternity, trainer, position, past record, wet or dry track, etc. all must be considered by successful bettor. The fact that the pari-mutuel system of betting is used is not determinative of the winner, but the amount of the purse. Webster's Third New International Dictionary (1967 Ed., p. 1642) defines pari-mutuel as:

"A system of betting (as on a horse race) in which those who bet on the winner share the total stakes minus a small per cent for the management."

Much was made on prior occasions when this question was before us of the fact that the odds change up until the last bet is placed on a race and hence the amount of the winning ticket is based on chance. We are not persuaded by that argument. Utah State Fair Ass'n v. Green, 68 Utah 251, 249 P. 1016 (1926) was one of the earliest and most frequently cited cases construing an anti-lottery constitutional provision very similar to our own. In that case Justice Straup answered the above argument as follows:

"* * * the pari-mutuel method or system of betting in no particular determines or affects the result of the race. It is merely a convenient means by the use of levers and mechanical appliances of registering, recording, and tabulating the bets and a ready means of displaying in the stages or progress of the betting the number and kinds of bets, all of which may as well, though perhaps not as conveniently, be done by charts and blackboards. * * * The device used in the pari-mutuel system of betting is not like a slot machine, or roulette wheel, or other similar device or instrument which by its manipulation or operation itself determines the result. The device merely registers or records and displays the bets as they are made. It is a mere posting of them. * * * As I conceive the proposition, it is: Is horse racing a game of chance or a game of skill? If it is a game of chance, that is the end of the inquiry. If it is a game of skill, is it rendered a game of chance by permitting betting or wagering, whether by the pari-mutuel system or by any other method, on the result of the race? Since betting or wagering on the race does not determine or affect the result of it, I think the conclusion inevitable that wagering or bet-

ting on the result of a game of skill does not convert the game into one of chance."

We agree with the Utah Justice. Further, as he said,

"We must take the Constitution as we find it, neither enlarging nor detracting from it. It merely provides that the Legislature shall not authorize 'any game of chance, lottery, or gift enterprise'. It does not forbid the Legislature authorizing betting, wagering, or gaming. * * * The wisdom of the Legislature authorizing or permitting betting or wagering of any kind, whether on a game of skill or otherwise, or on any event, or to permit any kind of public betting or wagering, may well be questioned, and concerning which minds of men may well differ. * * * But the question of wisdom is one of legislative policy over which we have no control.

"The Legislature may adopt any kind of policy not forbidden by the Constitution, and whether a given policy adopted by it not so forbidden is wise or unwise, wholesome or unwholesome, moral or immoral, are questions exclusively within the province of the Legislature. * * *"

 Though not binding on us, of course, it is interesting to note that a substantial majority of other courts have held that pari-mutuel betting on horse or dog races does not contravene constitutional prohibitions against lotteries. See Oneida County Fair Board v. Smylie, 86 Idaho 341, 386 P.2d 374 (1963) for a collection of these opinions.

Your inquiry is answered in the negative.

Respectfully submitted,

THOMAS S. LAWSON
ROBERT T. SIMPSON
ROBERT B. HARWOOD
JAMES N. BLOODWORTH
DANIEL T. McCALL, Jr.
 Justices.

Justices Merrill, Coleman, and Maddox would answer in the affirmative in accordance with the opinions of the majority of the justices in 249 Ala. 516, 31 So.2d 753, and a similar position taken by Stakely, Merrill and Coleman, JJ., in 272 Ala. 478, 132 So.2d 142.

Respectfully,

PELHAM J. MERRILL
JAMES S. COLEMAN, Jr.
HUGH MADDOX
 Justices.

HEFLIN, Chief Justice, expresses his opinion as follows:

I

House Bill 1531 contains the following under Section 14:

" * * *. Should there be no ticket bet on the winning greyhound, the entire pool shall be divided among the holders of tickets on the greyhound running next in line until the pool has been redistributed to the contributors."

This clause is interpreted as being in the nature of a lottery and, therefore, this clause of said bill violates Section 65 of the Constitution of Alabama in my opinion.

II

House Bill 1531 also contains the following provisions in connection with wagering on dog races:

"Section 5. It shall be the duty of the Jefferson County Racing Commission to carry out the provisions of this act; and it shall have the following specific duties:

 * * * * * *

(5) To make uniform rules and regulations governing the holding, conducting and operating of all race tracks, race meetings, and races held in Jefferson County."

 * * * * * *

"Section 13. The Commission shall make rules governing, permitting and regulating wagering on greyhound races under the form of mutuel wagering' by patrons known as 'pari mutuel wager' which method shall be legal to the extent that, and so long as, the same is carried on and conducted strictly in conformity with this act, and not otherwise. * * *"

"Section 14. * * * Under the pari-mutuel system of wagering herein provided, the licensee shall be permitted to provide separate pools for bets to win, place, and show, also a daily double pool quiniela pool, perfecta pool, big quiniela pool (Big Q), big perfecta pool (Big P), twin double pool, tierce pool, perfecta tierce pool (big T) and big tierce pool (Big T)." "* * * The licensee shall be required to use a totalizator machine to record the wagering and compute the odds. Rules and regulations governing the operation of each of the pools shall be set forth in book form by the Jefferson County Racing Commission.

These provisions leave to the Commission the power to make the rules and regulations concerning the racing and operation of such pools. Without knowledge of what these rules and regulations will be and how they will be operated, and, further, in the absence of facts disclosing the operation of such forms of wagering, it seems to me that an expression of an opinion on the constitutionality of House Bill 1531 other than that portion quoted under Section I of my opinion at this time necessarily would be based upon conjecture and surmise. Therefore, my views are in accordance with the opinion of Justice Goodwyn stated in Opinion of the Justices, 272 Ala. 478, 132 So.2d 142.

### III

House Bill 1532 provides for pari-mutuel pools; however no explanation or details of such pools are set forth. This bill contains language granting power to the State Racing Commission to make rules and regulation for the control, supervision and

direction of all licensees and for operation of race meets and races (see Section 2(4) of said bill). Without knowledge of what these rules and regulations will be it seems to me that an expression of opinion on the constitutionality of this bill at this time would be necessarily based upon conjecture and surmise. Therefore, my opinion pertaining to House Bill 1532 is in accordance with the opinion of Justice Goodwyn stated in the Opinion of the Justices, supra.

Respectfully submitted,

HOWELL T. HEFLIN
Chief Justice.