To the Members of the House of Representatives
State Capitol
Montgomery, AL 36130
Dear Sirs and Mesdames:
The Honorable John W. Pemberton, Clerk, Alabama House of Representatives, has forwarded to this Court House Resolution No. 265, a copy of which is attached hereto, requesting our written opinions on the following important constitutional question which has arisen concerning pending bill S. B. 481, a copy of which was attached to the resolution and is likewise attached hereto:
“1. Does Section 65 of the Constitution of Alabama of 1901 prohibiting the Legislature from authorizing lotteries or gift enterprises prohibit the Legislature from authorizing horse racing in Lawrence County with a pari-mutuel system of wagering as proposed by said SB 481?”
We answer the question you pose in the negative, that is, § 65 of the Constitution of Alabama of 1901, which prohibits the legislature from authorizing “lotteries or gift enterprises for any purposes” does not prohibit the legislature from authorizing horse racing in Lawrence County, Alabama, with a pari-mutuel system of wagering as proposed by said S.B. 481.
The Justices of this Court specifically opined that pari-mutuel wagering is gambling, but that the Constitution of Alabama does not restrict the legislature in its authority to authorize gambling but only prohibits its authorization of “lotteries or gift enterprises for any purposes.” Opinion of the Justices, 287 Ala. 334, 251 So.2d 751 (1971). The reader is referred to this .citation for the views of the various justices.
Although your resolution does not direct our attention to any other constitutional provision respecting the constitutionality of S.B. 481, in all candor, we think we ought to mention that the opinions reflected herein do not mean that S.B. 481 passes general constitutional muster. Particularly, we offer no opinion as to the applicability of Article IV, § 104(14) or of Amendment No. 375 or the decision of this Court in Peddycoart v. City of Birmingham, 354 So.2d 808 (Ala.1978), or Code 1975, § 13-7-50 et seq., or State v. Rogers, 281 Ala. 27, 198 So.2d 610 (1967), or Williams v. Kelley, 289 Ala. 440, 268 So.2d 485 (1972).
Our opinion is limited solely to the question posed as to whether § 65 of the Constitution prohibits authorizing horse racing and pari-mutuel system of wagering as proposed by S.B. 481, which we have answered in the negative.
Respectfully submitted,
C. C. TORBERT, Jr., Chief Justice
JAMES N. BLOODWORTH
JAMES H. FAULKNER
JANIE L. SHORES
ERIC EMBRY
SAMUEL A. BEATTY Associate Justices
*279 I agreed with the opinions expressed above but feel compelled to call certain matters to your attention. Section 104(14) of the Constitution of Alabama 1901 specifically prohibits the Legislature from enacting a local law fixing the punishment of a crime. Senate Bill 481 contains several provisions which purport to proscribe certain conduct, a violation of which would amount to either a misdemeanor or a felony. If these provisions be held unconstitutional as violating § 104(14), and the remainder of the legislation held valid under the separability provisions, horse racing would be authorized without any safeguards nor protection as originally contemplated by this legislation.
Perhaps more important to call to your attention are the general laws of this state contained in Division 2 of Article II, Chapter 7, Title 13, Code of Alabama 1975 (§ 13-7-50, et seq.). Section 13-7-50 makes it a misdemeanor for any person to buy or sell a pool or an interest or share in a pool or make or take a book upon any horse race. Section 13-7-51 prohibits any person giving, taking or receiving from another any money or thing of value to be bet or hazarded upon any horse race. Section 13-7-52 provides for a fine and imprisonment for any person or corporation to carry on bookmaking or pool selling, or keeping a place for betting on a horse race; and Section 13-7-53 mandates the forfeiture of a corporate franchise if any corporation is convicted of a violation of these sections. Senate Bill 581 does not purport to exempt Lawrence County from the provisions of the Code sections hereinabove referred to as did H.B. 251 which was introduced in the 1979 Regular Session of the Legislature. An advisory opinion was requested of the Justices by House Resolution 34 with respect to the constitutionality of such legislation (H.B. 251), but such request was withdrawn prior to the time the Justices answered this question.
This writer thought it appropriate to add these comments, lest the Legislature conclude that the Justices sanction the general constitutionality of this pending legislation.
C. C. TORBERT, Jr., Chief Justice
HR 265 REQUESTING AN ADVISORY OPINION OF THE JUSTICES OF THE SUPREME COURT RELATIVE TO SB 481.
BE IT RESOLVED BY THE HOUSE OF REPRESENTATIVES OF THE LEGISLATURE OF ALABAMA, That we respectfully request the Honorable Chief Justice and Associate Justices of the Supreme Court or a majority of them, to give this body their written opinions on the following important constitutional question which has arisen concerning the pending bill, SB 481, a copy of which is attached to this resolution and made a part hereof by reference:
1. Does Section 65 of the Constitution of Alabama of 1901 prohibiting the Legislature from authorizing lotteries or gift enterprises prohibit the Legislature from authorizing horse racing in Lawrence County with a pari-mutuel system of wagering as proposed by said SB 481?
RESOLVED FURTHER, That the clerk of the House of Representatives is hereby directed to send nine true copies of pending bill, SB 481, to the Clerk of the Supreme Court of Alabama, and to transmit this request to the Justices of the Supreme Court forthwith upon adoption of this resolution.
(R78-1697¡4-13-79)
S. 481
By Mr. Martin (N & P)
RFD — LL # 1
Rd 1-6-12-79
FUNDING NOTE: This bill will increase county revenue.
A BILL
TO BE ENTITLED AN ACT
To create and provide for the Lawrence County Racing Commission for the regulating, licensing and supervision of horse racing and wagering thereon; to prescribe the composition, appointment, powers, and duties of the Commission; to provide for and regulate the pari-mutuel or certificate *280 method of wagering within the enclosure of a licensed race track; to provide for the distribution of license fees, taxes, commissions, and other monies received under the provisions of the act; to provide certain penalties for the violation of this act and for other purposes relative thereto; and to provide for a referendum of the voters of the county on the question of whether the act will become effective in the county. BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
Section 1. The Lawrence County Racing Commission is hereby created and established and is vested with the powers and duties specified in this act and all other powers necessary and proper to enable it to execute fully and effectually the purposes of this act. The official name of said Commission shall be the Lawrence County Racing Commission, the same being sometimes referred to herein as the Racing Commission or the Commission. Said Commission shall consist of three persons who shall be appointed by the legislative delegation that represents Lawrence County in the house of representatives, and in the senate for the state of Alabama. The appointment of the three commissioners shall occur within 45 days after the date of passage of the referendum. Each such member shall hold office for a term of three years from the effective day of the appointment; provided, however, that the term of office for the original three commissioners shall be as follows: one commissioner shall be appointed for a term of one year; one commissioner shall be appointed for a term of two years and the third commissioner shall be appointed for a term of three years. After the initial appointments the commissioners shall serve the three-year term with one commissioner being appointed each year as provided herein. If a vacancy occurs for any reason, then that position shall be filled for the unexpired term and that commissioner shall be chosen in the same manner as other commissioners are appointed.
Section 2. The members of the Commission shall be qualified electors of Lawrence County and not less than 21 years of age, who shall have resided in the state of Alabama for a period of five years next preceding their appointment and their continued residency shall be a condition of their tenure in office. Each commissioner shall take the same constitutional oath of office as other county officers, and shall give bond payable to the county in the amount of $5,000.00 conditioned that he will faithfully and properly perform the duties of his office. The premiums of such bonds shall be paid by the Commission.
No member or employee of the Commission, and no spouse of any such member or employee, shall have any financial interest, direct or indirect, in any horse racetrack or operation incident thereof subject to the provisions of this act, or in any entity which has submitted an application for a license under this act, or in the operation of any wagering authorized under this act or participate as owner of a horse or otherwise as a contestant in any race subject to the jurisdiction of the Commission, or have any pecuniary interest in the purse or prize contested for in any such race. No member of the Commission, spouse of a Commission member, or member of the Commission member’s family shall make any contributions to a candidate for office or office holders on the local or state levels or cause a contribution to be made on their behalf.
Section 3. Each member of the Commission shall receive $50.00 for each day or part thereof spent, in the performance of his duties, and, in addition, shall be reimbursed for his reasonable expenses incurred herein. The above funds shall be paid out of the funds of the Lawrence County Racing Commission and shall be paid to the commissioners in the same manner as the compensation of other county officers is paid.
Section 4. The governing body of Lawrence County, shall be empowered to appoint an individual to serve as ex-officio treasurer of the Racing Commission, and shall collect all the license fees, taxes, and monies provided in this act, and shall supervise, check and audit the operation of the pari-mutuel wagering pools and the conduct and distribution thereof. Funds will be de *281 posited in a state chartered bank in Lawrence County.
Section 5. The Racing Commission shall have the authority to employ legal counsel of its select to advise the Commission and represent it in all proceedings. The compensation of such counsel shall be paid out of funds of the Lawrence County Racing Commission.
Section 6. (A) The Commission shall have the powers and duties necessary to carry out full and effectively the provisions of this act. Such powers and duties shall include, but not be limited to the following:
(1) The Commission shall establish and maintain a general business office within the county for the transaction of its business at a place to be determined by the Commission. The Commission shall meet at such times and places within the county as it shall determine. A majority of the commissioners shall constitute a quorum for convening of a meeting, but the performance of any duty or the exercise of any power of the Commission shall require a majority of the entire Commission.
(2) The Commission is vested with jurisdiction and supervision over all horse races licensed under the provisions of this act, and over all persons conducting, participating or attending such races. It shall employ such persons to be present at race meetings as are necessary to ensure that they are conducted with order and the highest degree of integrity, and may require that the licensee pay such salaries to such employees of the Commission as the Commission shall prescribe. It may eject or exclude from the enclosure or from any part thereof any person, whether or not he possesses a permit, whose conduct or reputation is such that his presence may, in the opinion of the Commission, reflect on the honesty and integrity of horse racing or interfere with the orderly conduct of horse racing.
(3) The Commission, its representatives and employees, shall visit, investigate and have free access to the office, track, facilities or other places of business of the licensee, and may compel the production of any of its books, documents, records or memo-randa for the purpose of satisfying itself that this act and its rules and regulations are strictly complied with; and in addition, the Commission shall require an annual balance sheet and operating statement of the licensee pursuant to the provisions of this act, and further, the Commission shall require a copy of any management and concession contract to which such licensee is or may be a party.
(4) The Commission shall prescribe and publicize reasonable rules, regulations and conditions under which all types of racing subject to its jurisdiction, and pari-mutuel wagering, shall be conducted in the county, and such other reasonable regulations as it deems necessary and appropriate to effect the purpose of this act. Such regulations may include penalties for violations.
(5) The Commission may issue subpoenas for the attendance of witnesses before it and administer oaths to and compel production of records or other documents and testimony of such witnesses whenever, in the judgment of the Commission, it is necessary to do so for the effectual discharge of its duties.
(6) The Commission shall have authority to compel the licensee hereunder to file with the Commission such data, including but not limited to, financial statements and information relative to stockholders and all others with any pecuniary interest in such person as shall appear to the Commission to be necessary for the performance of its duties hereunder, and may prescribe the manner in which books and records of such persons shall be kept.
(7) The Commission shall have authority to enter into arrangements with any other foreign or domestic governmental agency, whether federal, state or local, for the purposes of exchanging information, establishing security forces or performing any other act better to ensure the proper conduct of racing.
(8) The Commission shall report annually to the county commission of Lawrence County and to such state and federal authorities as required by law.
*282 (9) The Commission shall have the authority to demand for its file, the fingerprints of the following persons taken by a representative of a law-enforcement agency of the state or federal government, by inspectors of the Lawrence County Racing Commission or by such qualified private security agency as the Commission may designate: (i) every person licensed to hold racing meetings within Lawrence County; (ii) every person who is an officer or director of a corporation which holds a license, and every employee of the holder of any such license (whose duties relate to the horse racing business in Lawrence County); (iii) all owners, trainers, jockeys, apprentices, stable employees, managers, agents, blacksmiths or veterinarians, and any person who actively participates in the racing action of any license holder; and (iv) members and employees of the Lawrence County Racing Commission.
(10) All books, records, maps, documents, and papers of the Commission, including those filed with the Commission as well as those prepared by or for it, shall at all times be open for the personal inspection of any officer of the state of Alabama, or any county, municipality, or other subdivision of the state, or any official investigative body or committee, and no person having charge or custody thereof shall refuse this right to any officer or investigative body or committee, and it shall be the express duty of such person to assist such officer or committee in locating records or information desired by them. Any member or employee of the Commission who violates the provisions of this section shall be deemed guilty of a misdemeanor and, upon conviction, shall be fined not more than $100.00 or imprisoned in the county jail not exceeding three months. If any member of the Commission violates the provisions of this section he shall be subject to removal from office.
(11) The Commission shall appoint an executive secretary and such other employees as it deems essential to perform its duties under this act. Such employees shall possess such authority and perform such duties as the Commission shall prescribe or delegate to them. Such employees may include stewards, chemists, veterinarians, inspectors, accountants, guards, and such other employees deemed by the Commission to be necessary for the supervision and the proper conduct of the highest standard of horse racing. Such employees shall be compensated as provided by the Commission.
(B) The executive secretary, in addition to any other duties prescribed by the Commission, shall keep a true and full record of all proceedings of the Commission and preserve at the Commission’s general office all books, documents and papers of the Commission. Neither the executive secretary, nor spouse thereof, shall make any contributions to any candidate for public office or public office holder at the local or state level, nor shall anyone make any such contributions on behalf of the executive secretary or such spouse.
Section 7. Any person aggrieved by a refusal of the Commission to issue any license or permit, or suspension or revocation of a license or permit, imposition of a fine, or any other action of the Commission, may, within thirty days of such action, appeal to the circuit court of Lawrence County. .If the court finds that the action of the Commission was arbitrary, it shall order the issuance or reinstatement of such license or permit, abatement of such fine, or such other action as it deems appropriate. The decision of the court shall be subject to appeal as in other cases at law.
Section 8. Whenever it appears to the Commission that any person has been violating or may violate any provision of this act or any reasonable rule or regulation or final decision of the Commission, it may apply to the circuit court of Lawrence County for an injunction against such person. The order granting or refusing such injunction shall be subject to appeal as in other cases in equity.
Section 9. No person shall construct and establish a horse racetrack where race meetings are to be held and pari-mutuel wagering permitted, or own any such track or facilities in Lawrence County, unless he has obtained an owner’s license issued by *283 the Commission in accordance with the provisions of this act.
No person shall operate pari-mutuel wagering or conduct any race meeting at which wagering is permitted with his knowledge or acquiescence in Lawrence County unless he has obtained an operator’s license under the provisions of this act.
No license issued under the provisions of this act shall be transferable.
Section 10. Any person desiring to construct or own a racetrack at which pari-mu-tuel wagering is permitted shall file with the Commission an application for an owner’s license. Such application shall be filed at the time and place prescribed by the Commission and shall be in such form and contain such information as prescribed by the Commission, including the following:
(1) The name and address of such person; if a corporation, the state of its incorporation, the full name and address of each officer and director thereof, and if a foreign corporation, whether it is qualified to do business in the state of Alabama, if a partnership or joint venture, the name and address of each officer thereof.
(2) The name and address of each stockholder or member of such corporation, or each partner of such partnership or joint venture, and of each person who has or has contracted for a pecuniary interest in the applicant or the facilities at which such race meeting or pari-mutuel wagering will be conducted, whether such interest be an ownership or a security interest, and the nature and value of such interest, and the name and address of each person who has agreed to lend money to the applicant.
(3) Such information as the Commission deems appropriate regarding the character and responsibility of the applicant and the members, partners, stockholders, officers and directors of the applicant.
(4) The location and description of the racetrack, place or enclosure where such applicant proposes to hold race meetings. The Commission may require such information about the facilities and location of the track as it deems necessary and appropriate to determine whether they comply with the minimum standards provided in this act, and whether the conduct of race meetings at such location would be in the best interests of the people of Lawrence County.
(5) Such information relating to the financial responsibility of the applicant as the Commission deems appropriate.
(6) If any of the facilities necessary for the conduct of racing or pari-mutuel betting are to be leased, the terms of such lease.
(7) Any other information which the Commission in its discretion deems appropriate.
(8) The application filed hereunder shall be verified by the oath of affirmation of an officer of the applicant, and shall be accompanied by a nonrefundable fee of $15,-000.00.
Section 11. (A). The Commission shall promptly consider any application for an owner’s license, and grant or deny such license based on all information before it, including any investigations it deems appropriate. The Commission shall deny a license to any applicant unless it finds that the applicant’s facilities will meet the following minimum standards.
(1) That the facility provides a track for standardbred racing of at least five-eighths of a mile; and a track for flat racing of at least one mile.
(2) That the facilities be appropriate for the conduct of year-round racing and for night racing.
(B). The Commission shall deny a license to an applicant if it finds that for any reason the issuance of a license Lo the applicant would not be in the interest of the people of Lawrence County, or that the applicant, or any officer, partner, or director of the applicant:
(1) Has knowingly made a false statement of a material fact in the application, or has deliberately failed to disclose any information called for in the application.
(2) Is or has been guilty of any corrupt or fraudulent act, practice or conduct in con *284 nection with any horse race meeting in this or any other state.
(3) Has had a license or permit to hold or conduct a horse race meeting denied for just cause, suspended or revoked in any other state or country.
(4) Is not qualified to do business in Alabama, or is not subject to the jurisdiction of the courts of the state of Alabama.
(c) The Commission shall deny a license to an applicant unless it finds that the applicant owns a sufficient amount of land on which to locate a racetrack or that the applicant has obtained a lease or option on a sufficient amount of land on which to locate the racetrack.
Section 12. The owner’s license issued under this act shall be for the period set by the Commission, not to be less than 10 years, but shall be reviewed annually. The Commission shall designate on the license the duration of such license, the location of the proposed track, and such other information as it deems proper.
The Commission shall require a bond with surety in an amount equal to one-half of the total cost of the racetrack facilities.
The Commission may require the licensee to pay the Lawrence County Racing Commission a license fee of $2,000.00 per month for a period beginning six months from the date of issuance of the owner’s license to the date of the beginning of operation of the track. The license fee shall be used by the Lawrence County Racing Commission for operating expenses prior to the beginning of operation of the racetrack.
Section 13. (A). Any corporation desiring to hold a race meeting at which parimutuel wagering is permitted shall file with the Commission an application for an operator’s license. Such application may be made in conjunction with an application for an owner’s license. It shall be filed at the time and place prescribed by the Commission and contain such information as prescribed by the Commission, including all information prescribed for an owner’s license under this act.
(B). Any application filed hereunder shall be verified by the oath or affirmation of an officer of the applicant, and shall be accompanied by a nonrefundable fee of $10,000.00.
Section 14. The Commission shall promptly consider any application for an operator’s license, and grant or deny such license based on all information before, including any investigation it deems appropriate. The Commission shall deny a license to any applicant unless it finds: .
(1) That such applicant is a corporation organized under Title 10 of the Code of Alabama 1975 or comparable law of another state, and qualified to do business in Alabama;
(2) If the corporation is a stock corporation, that no one person owns more than 30 per centum of the stock of such corporation, and that no family group, which shall mean any person, his spouse, and his parents, owns more than 50 per centum of the stock of such corporation; if corporation is a non-stock corporation, that there are at least ten members, and that no more than 20 per centum of the membership belongs to any family group;
(3) That 50 per centum of the stock corporation is owned by residents of Alabama, or that 50 per centum of the membership of such non-stock corporation are residents of Alabama, that all stockholders or members have submitted to the jurisdiction of the Alabama courts, and all nonresident stockholders or members have designated the executive secretary" of the Commission as their agent for process;
(4) The applicant’s articles of incorporation provide that the corporation may, on vote of a majority of the stockholders or members, purchase at fair market value the entire membership interest of any stockholder, or require the resignation of any member, who is or becomes unqualified for such position under this act;
(5) That the applicant would be qualified for a license to own such racetrack facilities under the provisions of this act;
*285 (6) That the applicant shall make provisions satisfactory to the Commission for the detection and prosecution of any corrupt or fraudulent act, practice, or conduct in connection with any race meeting including membership in the Thoroughbred Racing Association, the American Quarterhorse Association, the United States Harness Association or other applicable associations, and that the applicant shall utilize the services of a protective agency acceptable to the Lawrence County Racing Commission.
Section 15. The operators’ license issued under this act shall be for a period of 10 years from the date of issuance, but shall be reviewed annually.
The operator’s license issued under this act shall permit the corporation to hold and conduct one or more race meetings at the licensed track each year. Races may be conducted six days or nights a week throughout the year. No racing shall be permitted on Sunday or on Christmas or Thanksgiving.
Any license issued under this act shall designate on its face the corporation to whom issued the location of the track where such meeting is to be conducted, the period during which such license is in effect and such other information as the Commission deems proper.
The Commission shall require a bond with surety acceptable to it, and in an amount determined by it to be sufficient to cover the annual indebtedness incurred by such licensee to the Lawrence County Racing Commission.
Section 16. The Commission may suspend or revoke any license or fine the holder thereof not to exceed $5,000.00 after hearing with 15 days’ notice in any case where it has reason to believe that any provisions of this act or any reasonable rule, regulation or condition of the Commission has not been complied with or has been violated.
Deliberations of the Commission hereunder may be' conducted in executive session, unless otherwise requested by the licensee. If any such license is suspended or revoked the Commission shall state its reason for doing so, which shall be entered of record. Such action shall be final unless appealed in accordance with the provisions of this act.
Section 17. Any person desiring to acquire stock in, or become a member of, the corporation which holds the operators’ license hereunder shall apply to the Commission on a form prescribed by it for approval of such acquisition of membership. The Commission shall consider such application forthwith, and may, if it finds it necessary, demand additional information of the proposed transferee or member. If in its judgment the acquisition or membership would be detrimental to the public interest, to the honesty and integrity of racing, or to its reputation, the application shall be denied. If the application is not denied within 30 days it shall be deemed approved.
Section 18. No person shall participate in any horse racing subject to the jurisdiction of the Commission or in the conduct of a race meeting or pari-mutuel betting thereon, whether as a horse owner, trainer, jockey, exercise boy, groom, stable foreman, valet, veterinarian, agent, pari-mutuel employee, concessionaire or employee thereof, or track employee, or enter the track enclosure in any capacity other than as a spectator, unless such person possesses a permit therefor from the Commission and complies with the provisions of this act and all reasonable rules and regulations of the Commission. No permit issued under the provisions of this act shall be transferable.
Section 19. Any person desiring to obtain a permit as required by this act shall make application therefor on a form prescribed by the Commission. Each applicant, or the chief executive officer of any corporation or partnership applying for an owner’s permit, shall be photographed and fingerprinted and shall supply such information as the Commission may require. Such information shall include a description of any convictions for a felony of such applicant or officer during the previous 10 years. The application shall be accompanied by a fee prescribed by the Commission, which may vary in amount for each person but shall not exceed $20.00.
*286 Any application filed hereunder shall be certified by the oath of affirmation of the applicant.
Section 20. (A) The Commission shall promptly consider any application for a permit and issue or deny such permit based on the information in the application and all other information before it, including any investigation it deems appropriate. If an application for a permit is approved, the Commission shall issue a permit which shall contain such information as the Commission deems appropriate. Such permit shall be valid for one year.
(B). The Commission shall deny the application and refuse to issue the permit, which denial shall be final unless an appeal is taken under the provisions of this act, if it finds that the issuance of such permit to such applicant would not be in the interest of the people of Lawrence County, or the horse racing industry of the county or that the applicant:
(1) Has knowingly made a false statement of a material fact in the application, or has deliberately failed to disclose any information called for by the application;
(2) Is or has been guilty of any corrupt or fraudulent practice or conduct in connection with any horse race meeting in this or any other state;
(3) Has knowingly failed to comply with the provisions of this act or the reasonable rules and regulations of the Commission;
(4) Has had a permit to engage in activity related to horse racing denied for just cause, suspended or revoked in any other state, and such denial, suspension or revocation is still in effect;
(5) Is unqualified to perform the duties required for the permit sought.
Section 21. The Commission may suspend or revoke a permit issued under this act or fine the holder of such permit not to exceed $1,000.00 after hearing with 15 days’ notice to the permittee, in any case where it has reason to believe that any provision of this act, or any reasonable rule, regulation or condition of the Commission, has not been complied with, or has been violated. The Commission may revoke such permit, after such hearing, if it finds that facts not known by it at the time it was considering the application indicate that such permit should not have been issued. Deliberations of the Commission under this section may be conducted in executive session unless otherwise requested by the permittee. If any permit is suspended or revoked the Commission shall state its reasons for doing so, which shall be entered of record. Such action shall. be final unless an appeal is taken in accordance with the provisions of this act.
Section 22. The licensee conducting race meetings under the provisions of this act shall pay to the ex-officio treasurer of the Racing Commission for the use of the Commission a tax in an amount equal to four percent of the total contributions of all pari-mutuel pools conducted or made at the race track licensed under this act. The Commission of a licensee on a pari-mutuel pool shall in no event exceed 18 percent of the amount contributed to said pari-mutuel pool, which amount shall include four percent tax heretofore provided. After the •deduction of the four percent for the use of the Commission and the percentage commission of the licensee, the remainder of the total contributions to each pool shall be divided among and redistributed to the contributors to such pools betting on the winning horses. The amount of each redistribution for each winning bet placed shall be determined by dividing the total amount remaining in the pool after the deductions hereinabove provided for by the number of bets placed on the winning horse. Each redistribution shall be made in a sum equal to the next lowest multiple of ten. The licensee is entitled to retain the odd cents of all redistributions to be known as the “breaks to a dime”, and all monies represented by an unclaimed, uncashed, or abandoned pari-mutuel tickets known as “outs” money. Under the pari-mutuel system of wagering herein provided, the licensee shall be permitted to provide separate pools for bets to win, place, and show and pools for combination bets such as daily double, exac- *287 ta and double exacta bets. Each pool shall be redistributed separately as herein provided. Should there be no ticket bet on the winning horse, the entire pool will be divided among the holders of tickets on the horse running next in line until the pool has been redistributed to the contributors. The licensee shall be required to use a totalizator machine to record the wagering and compute the odds. Rules and regulations governing the operation of each of the pools shall be set out in book form by the Racing Commission. Licensees shall make payment of such taxes to the ex-officio treasurer of the Racing Commission for each calendar month by the twenty-fifth day of the following calendar month.
Section 23. The governing body of Lawrence County may by ordinance impose a tax on the corporation licensed hereunder to conduct the race meetings of $.25 on the admission of each person on each day of such meeting, except those holding a valid permit under this act and actually employed at such track in the capacity for which such permit was issued, the licensee may collect such amount from the ticket holder in addition to the amount charged for the ticket of admission.
Section 24. The license fees, commissions, and excise taxes imposed herein shall be in lieu of all license, excise, and occupational taxes to the state of Alabama, or any county, city, town, or other political subdivision thereof.
Section 25. All fees, commissions, taxes, and other monies including fines and forfeitures received under the provisions of this act shall be paid to the ex-officio treasurer of the Lawrence County Racing Commission, and deposited by said treasurer to the account of the Lawrence County Racing Commission. All such monies remaining after payment of expenses incurred in the administration of this act, including the payment of the salaries and expenses of the members and employees of this Commission, shall be distributed on an annual basis as follows:
(1)20 percent of the monies shall be appropriated to the municipalities of Lawrence County, Alabama, on a pro rata basis according to population;
(2) 30 percent of the monies shall be appropriated to the Lawrence County Board of Education;
(3) 15 percent of the monies shall be appropriated to the Lawrence County Road and Bridge Fund for the use and benefit of the general road program of Lawrence County;
(4) 35 percent of the monies shall be appropriated to the general fund of Lawrence County to be allocated and spent in the following prescribed manner:
(a) 50 percent of this amount shall remain unearmarked and may be spent by the county governing body in any manner provided by law for the benefit of the citizens of Lawrence County;
(b) 15 percent to be used by the county governing body to upgrade law enforcement in the county;
(c) 10 percent for the establishment and maintenance of a county ambulance service and other health needs;
(d) 5 percent to be appropriated to the Lawrence County Health Department;
(e) 5 percent to be used by the county governing body for parks and recreation within Lawrence County;
(f) 3 percent to be appropriated to the Lawrence County Library Association for the upgrading of the library system;
(g) 2 percent to be appropriated to the North Central Alabama Mental Health Association to be used for mental health services within Lawrence County;
(h) 10 percent to the volunteer fire department of the county.
Section 26. Any corporation, association, or person who directly or indirectly holds a horse race without having procured a license as prescribed in this act shall be guilty of a misdemeanor. Any person wagering upon the results of such a race, by a licensee and upon the grounds or enclosure of said licensee, shall be guilty of a misdemeanor. Any corporation, organization, as *288 sociation, or person who violates any provisions of this act for which a penalty is not expressly provided shall be guilty of a misdemeanor. Upon conviction of any of the above misdemeanors in a court of competent jurisdiction the penalty shall be a fine of not less than $100.00, nor more than $1,000.00, or by imprisonment of not less than five days nor more than six months, or both, such fine and imprisonment to be in the discretion of the court.
Section 27. No person who engages in the practice of professional gambling on horse races, or in the practice of making gambling or wagering books on such races, or who knowingly takes any part in such practice, shall be eligible as an applicant for any license or permit to operate a race track or race meeting under the provisions of this act, or to be connected therewith in any capacity and any association or corporation which as an officer, director, stockholder, executive, or who employs any person who engages in such practices shall likewise be ineligible as a licensee, and the Commission is hereby empowered to inquire into such matters in entertaining any such application and otherwise in administering this act.
Section 28. Any person who shall influence or have any understanding or connivance with any owner, trainer, jockey, driver, groom, or other person associated or interested in any stable, horse or race in which any horse participates, to prearrange or predetermine the results of any such race or any person who shall stimulate or depress a horse for the purpose of effecting the results of a race, or by its use of any electrical device or any electrical equipment or by any mechanical or other device not generally accepted as regulation racing equipment or who so stimulates or depresses a horse, or who knowingly enters any horse in any race within a period of twenty-four hours after any drug has been administered to such horse for the purpose of increasing or retarding the speed of such horse shall be guilty of a felony and upon conviction thereof shall be imprisoned in the state prison for not less than one year nor more than 10 years, shall be fined not less than $1,000.00 nor more than $5,000.00 or both, in the discretion of the court.
Section 29. Any person, who except for medical purposes, administers any poison, drug, medicine or other substance to any horse entered or about to be entered in any race or who exposes such substance to a horse with the intent that it be taken, or who causes to be taken by or placed upon or in the body of such horse any foreign substance, with intent to impede or increase its speed, endurance, health or physical or mental condition shall be guilty of a felony and upon conviction thereof, shall be imprisoned in the state prison for not less than one year nor more than 10 years, or shall be fined not less than $1,000.00 nor more than $5,000.00 or both, in the discretion of the court.
Section 30. It shall be unlawful for any person to transmit or communicate to another by any means whatsoever the results, changing odds, track conditions, or other information relating to any horse race from any racetrack in Lawrence County between the period of time beginning one hour prior to the first race of the day and ending 30 minutes after the posting of the official results of each race, as to that particular race, except this period may be reduced to permit the transmitting of the result of the last race each day not sooner than 15 minutes after the official posting of such results. Provided, however, that the Commission may by rule, permit the immediate transmission by radio, television, or press wire of any pertinent information concerning feature races.
It shall be unlawful for any person to transmit by any means whatsoever racing information to any other person or to relay the same to any other person by word of mouth, by signal, or by use of telephone, telegraph, radio, or any other means when the information is knowingly used or intended to be used for illegal gambling purposes.
Any person violating the provision of this section shall be guilty of a felony and upon conviction shall be imprisoned in the state *289 penitentiary for not less than one year nor more than 10 years, or shall be fined not less than $1,000.00 nor more than $5,000.00 or both, in the discretion of the court.
Section 31. The possession or transportation of any drug except those permitted by regulations of the Commission within the racing enclosure is prohibited except upon a bona fide veterinarian’s prescription with complete statement of uses and purposes on the container. A copy of such prescription shall be filed with the stewards. Any person knowingly violating the provisions of this section shall be guilty of a misdemeanor and upon conviction in a court of competent jurisdiction, the penalty shall be a fine of not less than $100.00, nor more than $1,000.00 or by imprisonment of not less than five days nor more than six months, or both, such fine and imprisonment to be in the discretion of the court.
Section 32. Any person other than the lawful holder thereof who has in his possession any credential, license or permit issued by the Commission or a forged or simulated credential, license or permit of the Commission and who uses such credential or license for the purpose of misrepresentation, fraud or touting shall be guilty of a felony and upon conviction thereof, shall be imprisoned in the state prison for not less than one year nor more than ten years, or shall be fined not less than $1,000.00 nor more than $5,000.00 or both, in the discretion of the court.
Any credential, license or permit issued by the Commission if used by the holder thereof for a purpose other than identification and in the performance of legitimate duties on a racetrack shall be automatically revoked whether so used on or off a racetrack.
Section 33. Any person who knowingly enters or races any horse in any running or harness race under any name or designation other than the name or designation assigned to such horse by and registered with the Jockey Club, the United States Harness Association, the American Quarter Horse Association or other applicable association or who knowingly instigates, engages in or in any way furthers any act by which any horse is entered or raced in any running or trotting race under any name or designation other than the name or designation duly assigned by and registered with the Jockey Club, the United States Harness Association, the American Quarter Horse Association or other applicable association, is guilty of a felony and upon conviction thereof shall be imprisoned in the state prison for not less than one year nor more than 10 years, or shall be fined not less than $1,000.00 nor more than $5,000.00 or both, in the discretion of the court.
Section 34. No person shall wager on or conduct any wagering on the outcome of a horse race pursuant to the provisions of this act unless such person be eighteen years of age, or older. No person shall accept any wager from a minor. Violation of this section shall be a misdemeanor and upon conviction in a court of competent jurisdiction, the penalty shall be a fine of not less than $100.00, nor more than $1,000.00 or by imprisonment of not less than five days nor more than six months, or both, such fine and imprisonment to be in the discretion of the court.
Section 35. Any person who violates any of the provisions of this act for which a penalty is not herein expressly provided is guilty of a misdemeanor. Suspension or revocation of a license or permit by the Commission for any violation shall not prevent criminal liability for such violation.
. Section 36. Any person who conspires, confederates or combines with another, either within or without this state, to commit a felony prohibited by this act shall be guilty of a felony and upon conviction shall be imprisoned in the state prison for not less than one year nor more than 10 years, or shall be fined not less than $1,000.00 nor more than $5,000.00 or both, in the discretion of the court.
Section 37. It is the intent of this act to improve the economic well being of the citizens of Lawrence County, Alabama, by providing an increased tax base, jobs for the citizens of Lawrence County, and promotion of tourism and recreation in Law *290 rence County, Alabama. It is further the intent of this act to provide for strict local control of the racing plant or plants and the operation of said plants by Lawrence County citizens so as to minimize the possibility of undesirable gambling elements from ever controlling the industry.
Section 38. Upon the petition of 25 percent of the number of voters voting in the last preceding general election being filed with the probate judge of Lawrence County, the county governing body may call an election for Lawrence County to determine the sentiment of the people as to whether or not horse racing should be legalized in said county. Said election shall be held and the officers appointed to hold same in the manner provided by law for holding other county elections and the returns thereof tabulated and results certified as provided by law for such elections. Said election shall be held not less than 30 days, nor more than 45 days, from the date of filing said petition and notice thereof shall be given by the probate judge by publication at least three weeks before the date of said election in a newspaper in the county. The cost of said election, including the cost of notice by publication, shall be paid out of the general funds of the county. On the ballot to be used for such election the question shall be in the following form:
“Do you favor the creation of the Lawrence County Racing Commission to regulate licensing and supervision of horse racing and wagering thereon as provided in this Act No. _ approved _, 1979.” Only qualified voters shall vote in said election. If a majority of the votes cast in the referendum as “Yes”, horse racing shall be legal in Lawrence County and this act shall become operative therein; if the majority of the votes cast in the election are “No” this act shall have no further effect until if in a subsequent referendum a majority of the votes cast are “Yes”, provided that two years have elapsed between the dates of such elections.
Section 39. If any provision or part of this act shall be declared invalid, unconstitutional, or void, the balance of said act shall remain in full force and effect.
Section 40. All laws or parts of laws in conflict with this act are repealed.
Section 41. This act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law.